CLERK'S OFFICE U.S. DIST COURT
AT CHARLOTTESVILLE, VA
FILED
JUL 12 2004
JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| MORRIS LAW OFFICE, P.C., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JAMES EDDIE TATUM, ) <br> ) <br> ANN TATUM, ) <br> ) <br> and ) <br> ) <br> TEE ENGINEERING CO., INC., ) <br> ) | Civ. Act. No. 3:03cv00035 |

**Brief in Support of Motion for Judgment on the Pleadings or, in the Alternative, Motion for Summary Judgment**

In support of their Motion, James Eddie Tatum and Ann Tatum state as follows:

**I. Facts**

For purposes of summary judgment, these are the facts Morris Law Office, P.C. ("MLO") itself has pled or are undisputed by the parties:

Morris Law Office ("MLO") filed the above-captioned action to pursue claims flowing from Mr. and Mrs. Tatum's discharge of MLO's president, Walton Morris, Esq., as their lawyer in 2003. Until then, MLO had represented the Tatums in Colorado tribunals arising from damages sustained to the Tatums' real property in Las Animas County, Colorado as the result of coal subsidence. See MLO's Complaint at ¶ 3-5, 7. See also Contract for Legal Services (attached to MLO's Complaint as Exhibit 1) at initial unnumbered section and § 1.0.

1

On January 24, 2001, Mr. and Mrs. Tatum signed Mr. Morris's Contract for Legal Services (hereinafter "the Contract"). The Contract indicates that it "covers legal services that Morris has provided to date and may provide to the Tatums in the future in connection with administrative or judicial proceedings arising out of damage to Solitario." See Contract at § 1.0. In the Contract, "Morris" is how MLO referred to itself, and "Solitario" is the name of the Tatum's real property in Colorado, a ranch. See Id.

The Contract set forth primarily a contingency-fee arrangement. In the Contract, MLO was to be paid the greater of either attorney's fees awarded by the Colorado tribunals or a graduated contingency fee, rising to 25 percent of all sums recovered for the Tatums. See Contract at § 2.0.

But the Contract also contained an unconditional conversion clause. The Contract recites, "the Tatums' termination of this contract prior to final judgment . . . shall immediately entitle Morris to recover from the Tatums, and shall immediately obligate the Tatums to pay, a partial attorney fee for all time that Morris and any paralegals may have expended under this contract. The partial attorney fee shall be computed at the rate of $250.00 per hour of Morris' time [for all hours spent working for the Tatums on these legal matters]. . . ." See Contract at § 2.1(b). The reason MLO referred to this immediate entitlement upon discharge to lucrative hourly fees as a "partial attorney fee" is that in addition to the hourly fees, MLO *also* claimed for itself the continued right to the contingency fee as well. See Id. Thus, the discharge of MLO, regardless of the reason, would convert MLO's compensation from the future possibility of a contingency fee to an immediate entitlement for lucrative hourly fees *plus* the contingency fee. See Id.

MLO subsequently represented the Tatums regarding the damage to Solitario in several administrative bodies in Colorado was well as the District Court for Las Animas County, Colorado, a Colorado state court of general jurisdiction similar to Virginia's circuit court. For present purposes, two judgments by the Colorado court matter.

First, the Colorado court awarded the Tatums $41,310.59 for costs incurred in defending against the judicial review of the Tatum's success in a related administrative hearing. See MLO's Complaint at ¶ 18. The judgment was against an entity named Basin Resources, Inc., the entity that was responsible for the damage to their property. Later, in December of 2002, the Tatums obtained from the Colorado trial court a judgment against Basin in the amount of $622,000 for damage to their property. See MLO's Complaint at ¶ 27.

In both cases, Basin appealed. The $41,310.59 judgment by the Colorado trial court was settled for $30,000 in late December 2002 and early January 2003. See Id. at ¶ 19. The $622,000 judgment by the Colorado trial court is still on appeal to the Colorado Court of Appeals.

In January of 2003, Basin tendered to MLO the $30,000 settlement. MLO says it placed those funds in its attorney trust account. See MLO's Complaint at ¶ 36.

The Tatums discharged MLO in early February of 2003. The Tatums strenuously contend that they fired MLO for cause; MLO denies it.[1] Since their discharge of MLO, for the past year and a half, a Denver law firm has represented the Tatums on the appeal.

---

[1]. If this matter goes to trial, the Tatums will testify that (1) Mr. Morris lied to them repeatedly, (2) acted extremely erratically in the last months of MLO's representation of them, (3) ignored their instruction to place an expert witness on a budget, (3) demanded advances of fees against the expected contingency fee, and (4) deceived them about his planned distribution of the $30,000 settlement to induce them to accept the $30,000 settlement. In his deposition testimony, Mr. Morris denied all of this. Thus, this disputed issue of cause *vel non* must go to the jury.

3

Upon being discharged, MLO refused to disburse the $30,000 in settlement proceeds tendered to MLO by Basin. Instead, MLO claimed the right to more than half of the settlement in legal fees. MLO claimed the Tatums orally agreed to modify the Contract to pay him hourly rates for some of the administrative proceedings on March 13, 2001, seven weeks after entering into the written contingency-fee Contract on January 24, 2001 for all "legal services . . . in connection with administrative or judicial proceedings arising out of damage to Solitario," see Complaint at ¶ 14; Contract at § 1.0. MLO claimed the oral modification was that the Tatums would pay MLO $250.00 per hour for all work MLO performed in representing the Tatums before the Colorado Division of Minerals and Geology, *i.e.*, an administrative proceeding arising out of damage to Solitario. Id. at ¶ 14. Thus, based in large measure on this supposed oral modification, MLO refused to disburse the $30,000, saying he is entitled to more than half of it for his legal fees. See Complaint at ¶ 47.

Upon being discharged, MLO also promptly insisted on enforcement of the unconditional conversion clause. That is, without regard for the reason the Tatums discharged MLO and without regard for the fact that the Tatums have not and may never recover a single dollar on the $622,000 judgment from the trial court, MLO demanded immediate payment of $151,312.50 in hourly legal fees. MLO says this $150,000+ is the product of $250.00 per hour multiplied by the hours he spent working on the contingency-fee Contract. See Complaint at Counts II, III.

Following the discharge, the Tatums refused to acquiesce to MLO's demand for $151,312.50, and MLO refused to disburse the $30,000 settlement. See Complaint at ¶ 41, 57. Shortly thereafter, using federal interpleader jurisdictional and venue rules, MLO then filed the instant action here in this Virginia federal court. MLO interpled the bulk of the $30,000 in settlement proceeds and identified this interpled controversy as Count I in its Complaint. See

4

Complaint at ¶ 45, 53-54. MLO also demanded enforcement of the unconditional conversion clause, seeking $151,312.50 in contract damages in Count II of the Complaint. See Id. at ¶ 56. Finally, as an alternative to Count II should "Virginia law preclude MLO from recovering a contractual fee," MLO seeks the $151,312.50 pursuant to the equitable remedy of *quantum meruit*. This request for *quantum meruit* is set forth in Count III of the Complaint. See Id. at ¶ 61-63.

## II. Summary of the Tatums' Position

The Tatums assert several reasons why the Court ultimately should reject MLO's demand in Count II for over $150,000 pursuant to the unconditional conversion clause in the Contract. First, they assert that MLO breached its implied covenant of ethical, competent conduct and its explicit covenant to accept the case on a contingency. Pursuant to Virginia's law of contracts, MLO's failure to fully perform his part of the Contract exonerates the Tatums of any obligations they may have under the Contract. See *Hurley v. Bennett*, 163 Va. 241 (1954).[2] Second, even assuming MLO did not breach, Virginia law rejects contract damages as a remedy when an attorney is discharged; rather, Virginia law permits only the equitable remedy of *quantum meruit*. Third, the unconditional conversion clause, which purports to entitle MLO to over $150,000 immediately regardless of the reason for his discharge in a contingency-fee representation, is void and unenforceable.

The Tatums assert two reasons why the Court should reject Mr. Morris's demand for the same $150,000+ pursuant to *quantum meruit* in Count III. First, *quantum meruit* cannot be

---

[2] This first argument is not pressed herein as a reason to grant summary judgment, because Mr. Morris denies many of the facts supporting the Tatums' assertion of breach, thereby making this a matter for the jury.

5

awarded when an attorney is discharged for cause or resigns without cause. See *Khodr v. Garcia*, 2002 Va. Cir. LEXIS 326, 59 Va. Cir. 15 (Richmond 2002); see also *Universal Acupuncture Pain Services, P.C. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259 (2nd Cir. 2004); *Teichner by Teichner v. W&J Holsteins, Inc.*, 64 N.Y.2d 977, 979 (1985).[3] Second, *quantum meruit* is an equitable remedy awarded to a party needing it due to no fault of his own. Virginia law prohibits the award of *quantum meruit* when an attorney seeks it because his fee contract is void as against public policy, as the relevant section of the Contract is here.

Finally, the Tatums assert two reasons on summary judgment why MLO has no right to legal fees from the interpled $30,000. MLO's basis for this claim is a supposed oral modification in March of 2003 of the written Contract that MLO would be paid $250.00 hourly for work in a particular administrative proceeding regarding damage to Solitario. But in the Contract signed in January of 2003, MLO already promised to handle all administrative and judicial proceedings regarding damages to Solitario. This supposed oral modification fails for lack of consideration. And under Colorado ethics rules, with which MLO was bound to comply, the supposed oral modification must have been written. For this additional reason, the oral modification fails.

---

[3] Again, because Mr. Morris has denied many of the facts supporting the Tatums' assertion of cause to fire MLO, this argument is not pressed on summary judgment. It is a matter for the jury.

6

## II. Analysis of the Summary Judgment Arguments

A. <u>Virginia Law, Virginia's Attorney-Ethics Rules, and Colorado's Attorney-Ethics Rules Apply to this Matter</u>

The parties agreed they would use Virginia law to interpret the Contract. See Contract at § 5.2. Although this Contract called for legal representation of Colorado citizens in Colorado tribunals against a Colorado defendant for damage done to a Colorado ranch, Mr. Morris did perform legal research and writing in his home in Virginia. Because there is some reasonable relationship to Virginia, the choice of law provision is not contrary to Virginia's choice of law rules. Thus, Virginia law governs the interpretation of the Contract.

Both Colorado's and Virginia's attorney-ethics rules govern Mr. Morris's conduct, because Mr. Morris was admitted *pro hac vice* in this matter in the Colorado court and because he is a Virginia-licensed attorney. See Virginia Rules of Professional Conduct, Rule 8.5(a)(holding, "A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction, regardless of where the lawyers' conduct occurs. A lawyer may be subject to the disciplinary authority of both this jurisdiction and another jurisdiction where the lawyer is admitted for the same conduct."); see also Rule 8.5(b)(stating, "Choice of Law. In any exercise of the disciplinary authority of this jurisdiction, the Rules of Professional Conduct to be applied shall be as follows: (1) for conduct in connection with a proceeding in a court before which a lawyer has been admitted to practice (either generally or for purposes of that proceeding), the rules to be applied shall be the rules of the jurisdiction in which the court sits . . . .")

B. The Court Should Grant Summary Judgment to the Tatums on Count II, Because Virginia Law Allows Only *Quantum Meruit* and Not Contract Damages When an Attorney is Discharged

Virginia law rejects contract damages and relies solely upon *quantum meruit* as the proper form of recovery upon an attorney's discharge in a contingency fee case. See *Heinzman v. Fine, Fine Legum & Fine*, 217 Va. 958 (1977). In *Heinzman*, a lawyer with a contingency fee contract was fired without cause, and he sought as his remedy an agreed-upon fee fixed in his contract as his remedy. The Virginia Supreme Court refused. They held, "contracts for legal services are not the same as other contracts . . . . [The attorney here] contends, however, that when the discharge is without just cause, the act constitutes a breach of contract and that the measure of damages is the fee fixed in the contract. We agree with the courts that hold otherwise." *Id.* at 963. The Virginia Supreme Court then quoted and relied upon New York's highest court, which ruled,

> That the client may at any time for any reason or without any reason discharge his attorney is a firmly-established rule. . . . The attorney may recover the reasonable value of the services which he has rendered but he cannot recover for damages for the breach of contract.

*See Heinzman*, 217 Va. at 963, *quoting Martin v. Camp*, 219 N.Y. 170 (1916).

Ultimately, the Virginia Supreme Court concluded, "We share the conclusion that *quantum meruit* is the most functional and equitable measure of recovery." See *Heinzman*, 217 Va. at 964. See also 7 Am. Jur. 2d, *Attorneys at Law*, § 181 (summarizing American law, "An attorney who is employed under a contingent fee contract and discharged prior to the occurrence of the contingency is limited to *quantum meruit* recovery for the reasonable value of the services rendered to the client . . . .")

B. **The Court Should Grant the Tatums Summary Judgment on Count II, Because Even if Virginia Law Permits Contract Damages When an Attorney is Discharged, MLO's Unconditional Conversion Clause is Void as Against Public Policy**

This Court may not enforce a contract that is contrary to public policy. Here, the unconditional conversion clause in the Contract clearly is contrary to public policy.

At issue here are two fundamental tenets of the law governing legal representation. First, all legal fees must be reasonable. See Virginia Rules of Professional Conduct at 1.5; Colorado Rules of Professional Conduct at 1.5. See also Virginia State Bar Legal Ethics Opinion 1606 (1996)(holding, "Contracts for legal services are not construed as are other commercial contracts. . . . The fact that a fee is stated and agreed to in a contract is not dispositive of whether it is reasonable . . . ."); Virginia State Bar Legal Ethics Opinion 1766 (2002)(holding, "[A]ll fee agreements [are] subject to the requirement of Rule 1.5(a) that the fee be reasonable"); Virginia State Bar Legal Ethics Opinion 1667 (1996)(holding, "regardless of the agreed terms in a written contract of employment between attorney and client, the lawyer cannot legitimize a fee that is otherwise prohibited . . . .")

The second fundamental tenet at issue here is that a client may, at any time, discharge his or her attorney. See also 7 Am. Jur. 2d, *Attorneys at Law*, § 181 (summarizing American law, "a client may, at any time, terminate the relation between himself or herself and the attorney, with or without cause. The existence or nonexistence of a valid cause for the discharge of an attorney is important only in determining the attorney's right to compensation or damages. This right of a client is an implied term of every contract of employment of counsel . . . . The right is deemed necessary in view of the confidential nature of the relation between attorney and client, and the evil that would be engendered by friction or distrust.")

9

Even if the conversion clause in the Contract applied only to discharges without cause, it would violate both tenets that fees must be reasonable and that a client must have freedom to discharge. See, e.g., *The Florida Bar v. Spann*, 682 So.2d 1070 (Florida 1996)(upholding discipline against attorney because his contingency fee agreement provided that if he were terminated before reaching final judgment, the client would owe him on an hourly-fee basis); see also 7 Am. Jur. 2d, *Attorneys at Law*, § 181 (summarizing American law, "a contract between an attorney and a client is unenforceable where it requires the client to pay damages for terminating its attorney's employment contract, because such a contract eviscerates the client's absolute right to terminate its attorney's employment.")

But the conversion clause here is even worse than a clause requiring hourly rates upon a discharge without cause. This conversion clause is *unconditional* – MLO is rewarded even if the discharge is *for cause*. Thus, this portion of the Contract is indisputably void on its face.[4]

Indeed, even if this *were* just an ordinary contract and not a contract for legal representation, it still would be void. That is because this unconditional conversion clause ultimately is a liquidated damages provision. The goal of contract damages is to make the non-breaching party whole, placing the non-breaching party in neither more nor less than as good a position as if the contract had been performed. See *Appalachian Power Co. v. John Stewart*

---

[4] In MLO's response to this argument, MLO may protest that it disputes it was discharged for cause, and thus the Court must assume MLO was discharged without cause for purposes of determining on summary judgment whether this provision in the Contract is void. MLO's protest would be that the Tatums have constructed a straw man to knock down. But this protest would be incorrect. Even when a party *could* have drafted an enforceable provision to bind the other party, if the provision it seeks to use is unenforceable, a Virginia court will not "blue-pencil" it to make it enforceable. See *Richardson v. Paxton Co.*, 203 Va. 790 (1962); *Grant v. Carotek, Inc.*, 737 F.2d 410 (4th Cir. 1984); *Roto-Die Co. v. Lesser*, 899 F.Supp. 1515, 1523 (W.D.Va. 1995). That is why Virginia courts routinely void in their entirety overly-broad non-competition agreements, even when the former employer *could* have written a non-compete that prevents the ex-employee from doing whatever has drawn the former employer's ire.

*Walker, Inc.*, 214 Va. 524 (1974); *Lehigh Portland Cement Co. v. Virginia S.S. Co.*, 132 Va. 257 (1922). Here, this unconditional conversion clause places MLO in a far better position than it had never been discharged – upon discharge, MLO gets lucrative, immediate and certain hourly fees, *plus* the contingency fee later, rather than simply the possibility of the contingency fee in the future. Undoubtedly, therefore, this unconditional conversion clause is a liquidated damages provision, and it is not enforceable because MLO cannot show that the actual damages to which it would be entitled for breach could not be ascertained. See *Taylor v. Sanders*, 233 Va. 73 (1987); *Crawford v. Heatwole*, 110 Va. 358 (1909).

C. **The Court Should Grant the Tatums Summary Judgment on Count III, Because an Attorney May Not Rely On the Equitable Remedy of *Quantum Meruit* To Obtain a Recovery when the Reason He Needs *Quantum Meruit* is That His Contract for Legal Services is Void as Against Public Policy**

If a contract for legal services is void as against public policy, then the attorney may not rely upon *quantum meruit* to get his recovery. See *Roller v. Murray*, 112 Va. 780 (1911)(observing, "It is also well settled . . . where the contract is . . . against public policy, an action cannot be maintained either to enforce it directly or to recover the value of services rendered under it . . . ," and ruling, "We are of opinion that to permit an attorney to recover upon a *quantum meruit* the value of his services rendered under an unlawful agreement . . . would be to encourage the making of such contracts on the part of attorneys, and would furnish an easy expedient for escaping the consequences of entering into contracts in violation . . . of public policy."). This rule, an enunciation of the general rule that equity can be awarded only to blameless parties, is common throughout the United States. See, *e.g.*, *White v. McBride*, 937 S.W.2d 796 (Tenn. 1996)(same).

11

D.  Even if MLO Has a Viable Claim to *Quantum Meruit*, the Court Should Dismiss Count III, Because it is Not Ripe

Ripeness concerns the appropriate timing of judicial consideration of a claim. See *ProEnglish v. Bush*, 2003 U.S.App. LEXIS 9397 (4th Cir. 2003)(unpublished decision). The doctrine of ripeness warrants against deciding a dispute that has been brought too early, and is, as a result, presently unsuitable for decision. See *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967). One of the chief considerations in determining whether a case is presently unripe is "whether the courts would benefit from further factual development of the issues presented." *ProEnglish*, 2003 U.S.App. LEXIS at *3. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 118 S.Ct. 1257, 1259 (1998); *McGhee v. Director*, 1998 U.S.App. LEXIS 15115 at *2 (4th Cir. 1998). Even if the ultimate result in the state court only <u>may</u> affect somewhat the decision in federal court, the federal court should withhold its decision until the state court acts. "Federal ripeness doctrine . . . counsels against adjudication of questions that might be altered . . . by further action in the state court." *McGhee*, 1998 U.S.App. LEXIS at *2, quoting *Crestar Mortgage Corp. v. Peoples Mortgage Co.*, 818F.Supp. 816, 820 N.5 (E.D.Pa. 1993). Ultimately, the burden of establishing ripeness lies with MLO, the party bringing the claim. See *Renne v. Geary*, 501 U.S. 312, 316 (1991); *Friends for Ferrell Parkway, LLE v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002).

At the moment, the Tatums are at the first step on appeal, attempting to protect their $622,000 judgment. The Colorado Court of Appeals, and then the Colorado Supreme Court, will have the ability to affirm, to vacate and remand for a new trial, to modify and remit the award, or to reverse and render judgment for Basin. The Tatums' judgment from the Colorado trial court

12

is still is significant peril. Whether the Tatums ultimately protect or lose their $600,000+ judgment will matter to this Court in trying to determine what is fair compensation for an attorney discharged in a contingent fee case. Until the Colorado courts make a final determination in the case, the Court cannot determine what is fair or, indeed, whether MLO is owed anything at all. See, *e.g. Rosenberg v. Levin*, 409 So.2d 1016 (Florida 1982)(ruling, "[I]n contingency fee cases, the cause of action for *quantum meruit* arises only upon the successful occurrence of the contingency. If the client fails in his recovery, the discharged attorney will similarly fail and recover nothing."), *Fracasse v. Brent*, 6 Cal.3d 784 (California 1972)(same); *Plaza Shoe Store, Inc. v. Greene, Cassity, Carnahan, Freemont & Greene*, 636 S.W.2d 53 (Missouri 1982)(same); *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry*, 629 N.E.2d 431 (Ohio 1994)(same); *Clerk of Superior Court of Guilford County v. Haines*, 361 S.E.2d 115 (North Carolina 1987)(same).

E. The Court Should Grant the Tatums Summary Judgment On Count I to the Extent MLO Makes a Claim for Legal Fees Pursuant to the Alleged Oral Modification of the Contract, Because the Oral Modification Fails for Lack of Consideration and is Void Because It Is Not Written

MLO has no right to legal fees from the interpled $30,000. MLO's basis for this claim is a supposed oral modification in March of 2003 of the written Contract that MLO would be paid $250.00 hourly for work in a particular administrative proceeding regarding damage to Solitario. But in the Contract signed in January of 2003, MLO already promised to handle all administrative and judicial proceedings regarding damages to Solitario. This supposed oral modification fails for lack of consideration. When parties modify a contract, they must exchange additional consideration. See *Rowland Lumber Co. v. Ross*, 100 Va. 275 (1902). Here, the

13

Tatums received nothing for their supposed March 2003 oral promise beyond what MLO already owed the Tatums from the written, January 2003 Contract.

Moreover, under Colorado ethics rules, with which MLO was bound to comply, the supposed oral modification must have been written. See Colorado Rules of Professional Conduct 1.5, *Comment* (stating, "in a new client-lawyer relationship, the basis or rate of the fee must be promptly communicated in writing to the client. When the lawyer has regularly represented a client, they ordinarily will have reached an understanding concerning the basis or rate of the fee; but, when there has been a change from their previous understanding, the basis or rate of the fee should be promptly communicated in writing.") For this additional reason, the oral modification fails.

## IV. Conclusion

For these reasons, the Tatums respectfully request that their Motion be granted.

Respectfully submitted,

JAMES EDDIE TATUM and ANN TATUM

By Counsel

_____
John E. Davidson, Esq. (VSB# 40470)
Davidson & Kitzmann, PLC
211 East High Street
Charlottesville, Virginia 22902
Telephone: (434) 972-9600
Facsimile: (434) 220-0011

## Certification

I certify that I will cause to be faxed on July 12, 2004, a copy of the foregoing to:

Peter B. Vaden, Esquire
609 East Market Street
P.O. Box 111
Charlottesville, VA 22902-0111
Counsel to Plaintiff Morris Law Office

Joe F. Childers, Esquire
201 West Short Street, Suite 310
Lexington, Kentucky 40507

David Rubinstein, Esquire
524-B Caroline Street
Fredericksburg, Va. 22401
Counsel to Defendant TEE

_____
John E. Davidson, Esq.