IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| **MORRIS LAW OFFICE, P.C.,** )<br>    **a Virginia professional corporation,** )<br>                              **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 3:03cv00035** |
| ) | |
| **JAMES EDDIE TATUM,** ) | |
| ) | |
| **ANN TATUM,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **TEE ENGINEERING CO., INC.,** ) | |
| **a Kentucky corporation,** ) | |
|                    **Defendants.** ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
## FOR SUMMARY JUDGMENT

This action encompasses three separate but related claims. The first is an interpleader claim requesting that the Court determine the appropriate distribution of $29,023.50 which Morris Law Office, P.C. ("MLO"), the plaintiff in this action, has deposited in the registry of this Court, plus accumulated interest on that deposit. The funds in question are the disputed portion of a compromise award of costs and expenses that MLO's principal received on behalf of defendants James Eddie ("Jim") Tatum and Ann Tatum ("the Tatums"). MLO claims $8,782.15 of the interpled funds as the balance of attorney fees due for work performed on the Tatums' behalf in administrative and judicial review proceedings before the District Court of Las Animas County, Colorado, and the Colorado Court of Appeals (collectively, "the judicial review litigation"). MLO claims the balance of the interpled funds as reimbursement the Tatums owe for expenses that MLO incurred in prosecuting the Tatums' related damage action against Basin Resources, Inc. ("Basin") in the same state trial court.

The second and third claims in this action are MLO's alternative claims for attorney fees that the Tatums owe under either the parties' Contract for Legal Services or principles of *quantum meruit*. Each alternative claim also seeks money the Tatums owe MLO under the Contract for Legal Services as reimbursement of additional expenses that MLO incurred in prosecuting the Tatums' damage action.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, MLO has moved for summary judgment with respect to all claims. In support of MLO's motion, this memorandum briefly discusses this Court's jurisdiction and the applicable standards for granting summary judgment. This memorandum then presents the material facts with respect to each claim at issue, followed by MLO's argument and authorities for granting the motion.

I.

### **This Court Has Jurisdiction of This Action**

This Court has jurisdiction of MLO's first claim in this action because (a) at the outset MLO held more than $500.00 in funds that the parties adversely claimed or may have been entitled to claim, (b) the claimants to those funds were and are of diverse citizenship as defined in 28 U.S.C. § 1332, and (c) MLO, simultaneously with the filing of this action, deposited the contested funds into the registry of this Court, there to abide the Court's judgment. 28 U.S.C. § 1335. This Court has jurisdiction of MLO's alternative second and third claims for unpaid attorney fees and expenses because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different States. 28 U.S.C. § 1332(a). This Court may exercise personal jurisdiction over the Tatums, who are the only defendants to those claims, because the claims arise

-2-

from the Tatums' transaction of business in the Commonwealth of Virginia within the meaning of VA.CODE § 8.01-328.1(1).

## II.

### Standards Governing Entry of Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, . . .show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court of the United States has held that "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

Specifically, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party . . . [i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250; *see also Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003) ("[a] mere scintilla of proof, however, will not suffice to prevent summary judgment").

### III.

### Statement of Material Facts as to Which There Is No Genuine Dispute

**A.    MLO's Interpleader Claim.**

On January 24, 2001, the Tatums and MLO executed their Contract for Legal Services to govern existing administrative proceedings and a planned civil action for damages against Basin. *See* Morris Declaration, ¶ 44, p. 10, and Exhibit 6; Jim Tatum Deposition at 96, 102-03. Among the provisions of the Contract for Legal Services is the Tatums' agreement "to reimburse all of [MLO]'s reasonable expenses incurred in connection with work performed under this contract." Morris Declaration, Exhibit 6 at 3. The contract further provides that "[t]he Tatums shall reimburse the full amount of expenses covered by this Paragraph within thirty (30) days of the date on which [MLO] bills them." *Id.*

During the course of their damage action, the Tatums authorized MLO to employ TEE to provide engineering consulting services and expert witness testimony. Morris Declaration, ¶ 112, p. 28; Ann Tatum Deposition at 47, 51. TEE billed MLO monthly for its work, and MLO transmitted copies of TEE's bills to the Tatums as MLO received them. *See* Morris Declaration, ¶ 113, p. 28. In all TEE billed MLO $31,553.00. *See* Morris Declaration, ¶ 113, p. 28. By December 17, 2002, MLO had in turn billed the Tatums for reimbursement of that amount. Morris Declaration, ¶ 124, p. 31, and Exhibits 79-80. Over the course of the Tatums' damage action, MLO paid TEE a total of $12,368.00, leaving a balance due TEE after December 17, 2002, of $19,185.00. Morris Declaration, ¶ 124, p. 31. Of the $12,368.00 that MLO paid TEE, the Tatums had specifically directed MLO to pay $11,868.00. Morris Declaration, ¶¶ 115-16, p. 29, ¶ 121, p. 30, and Exhibit 77.

On December 24, 2002, following the Colorado trial court's entry of judgment in the Tatums' favor for $622,000.00 plus additional monetary relief, MLO completed and filed a *Plaintiffs' Bill of Costs* in the Tatums' damage action. Morris Declaration, ¶ 96, p. 24, and Exhibit 30. In their bill of costs, the Tatums seek recovery from Basin for all of the fees and expenses that TEE charged MLO and that MLO asked the Tatums to reimburse. *Id.* Although MLO prepared and filed the Tatums' bill of costs from Charlottesville, Virginia, MLO included Mr. Tatum as signatory attorney. *Id.*

MLO subsequently prepared and filed with the Colorado trial court a reply to Basin's objections to the Tatums' bill of costs. Morris Declaration, ¶ 96, p. 24, and Exhibit 31. The Tatums' reply defends their request for a cost award including the entire amount TEE billed for its services. *Id.* As with the Tatums' bill of costs, MLO included Mr. Tatum as signatory attorney on this pleading. *Id.* The Tatums have not withdrawn or modified their bill of costs in any respect in the year and half since MLO filed it. Morris Declaration, ¶ 101, p. 25; Jim Tatum Deposition at 36, 199-202.[1]

On November 21, 2002, the District Court of Las Animas County, Colorado, ("the Colorado trial court") entered an *Order Fixing and Awarding Attorney Fees, Costs and Expenses* for work that MLO's principal performed in the judicial review litigation. *See* Morris Declaration, ¶ 69, p. 17, and Exhibit 27; Jim Tatum Deposition at 54-56, 126-27. That order assessed against Basin and in favor

---

[1]     MLO's principal is certain that he submitted to the Tatums for approval – and actually obtained the Tatums' approval of – the bill of costs, reply in support of that bill of costs, and supplement to the bill of costs that MLO filed in the Tatums' damage action. Morris Declaration, ¶ 96, p. 24, ¶ 100, p. 25. MLO recognizes that the Tatums have denied that they reviewed and approved any of these pleadings. Because the Tatums' evidence on this point is unsupported by any other part of the record, and because it is inconsistent with their subsequent actions, the Tatums' denials that they approved the filing of their cost pleadings is inherently incredible and thus insufficient to raise a **genuine** factual dispute that would preclude the summary judgment MLO seeks.

of the Tatums an award in the amount of $41,310.59, including $39,487.50 in attorney fees and $1,823.09 in expenses.

Basin subsequently filed an appeal of the award of costs and expenses in the judicial review litigation and then offered to withdraw its appeal if the Tatums accepted a compromise award of $30,000.00. *See* Morris Declaration, ¶ 71, p. 18. The Tatums eventually authorized acceptance of Basin's offer in light of MLO's agreement to apportion to the Tatums an amount equal to all of the fees and expenses that the Tatums had paid in connection with the judicial review litigation. *See* Morris Declaration, ¶ 73, p. 18, ¶¶ 75, 78, p. 19; Jim Tatum Deposition at 208.

The Tatums failed to reimburse MLO on or before January 16, 2003, the $19,185.00 balance of fees and expenses that MLO had billed to the Tatums in connection with TEE's participation in their damage action. Morris Declaration, ¶ 125, p. 31. On January 23, 2002, MLO's principal attempted to persuade Jim Tatum to authorize MLO to pay down or pay off the balance due TEE out of the proceeds due the Tatums from the compromise award. Morris Declaration, ¶ 79, p. 20, ¶ 126, p. 32. Mr. Tatum refused and indicated that he and his wife would pay down or pay off the balance due TEE only at some indefinite time of their choosing. *Id.* Mr. Tatum refused to acknowledge a contractual obligation to reimburse MLO immediately with respect to the balance due TEE. *Id.* To emphasize his position on the issue, Mr. Tatum transmitted to MLO's principal by telefax specific instructions for disbursing the compromise award. Morris Declaration, ¶ 80, p. 20, and Exhibit 29.

After obtaining an informal ethics opinion on the subject from the Virginia State Bar, Morris Declaration, ¶ 127, p. 32, and Exhibit 81, MLO's principal informed the Tatums that MLO disputed their right to payment of their portion of the compromise fee award, absent a satisfactory resolution of the balance due TEE. Morris Declaration, ¶ 138, p. 32-33 and Exhibit 82. The Tatums refused

to authorize any payment toward the balance due TEE, terminated the parties' Contract for Legal Services, and withdrew MLO's authority to litigate the Tatums' bill of costs to final decision. Morris Declaration, ¶¶ 129-133, p. 33, and Exhibits 83-87; Jim Tatum Deposition at 208. MLO then commenced this action, asserted its interpleader claim, and deposited $29,023.50 of the compromise fee award into the registry of this Court.

**B.      MLO's Claim for Attorney Fees and Additional Expenses**

In addition to the expense reimbursement provisions described in the preceding section of this memorandum, the Contract for Legal Services between the Tatums and MLO contains, among other things, an agreement between the parties that:

> (i) the Tatums' termination of this contract prior to final judgment, (ii) the Tatums' unilateral withdrawal of Morris' authority to file and litigate to final decision a petition for costs and expenses on the Tatums' behalf, or (iii) the Tatums' breach of their agreement not to waive or compromise their claim to an award of attorney fees shall immediately entitle Morris to recover from the Tatums, and shall immediately obligate the Tatums to pay, a partial attorney fee for all time that Morris and any paralegals may have expended under this contract. The partial attorney fee shall be computed at the rate of $250.00 per hour of Morris' time and $50.00 per hour of paralegal or law clerk time, reduced by credit for the $5,000.00 initial fee that the Tatums pay at the execution of this contract. The balance of Morris' total attorney fee shall be determined in accordance with subsection 2.0 of this contract. The partial attorney fee described in this subparagraph shall become due and payable regardless of whether Morris' recovery of attorney fees would otherwise be contingent upon recovery of either money damages or an attorney fee award.

Morris Declaration, Exhibit 6 at 2. Jim Tatum initially objected to this provision, but he and his wife relented and executed the contract when MLO's principal insisted that it remain in the document. Morris Declaration, ¶ 38-44, p. 9-10. Mr. Tatum intended to comply with all terms of the Contract for Legal Services when he executed it. Jim Tatum Deposition at 103.

Jim Tatum is himself an attorney who has handled numerous contingent fee cases in his career. Jim Tatum Deposition at 32. Ann Tatum is an experienced paralegal. Jim Tatum Deposition at 87; Ann Tatum Deposition at 6-7. Jim Tatum specifically negotiated the Contract for Legal Services with MLO's principal. Jim Tatum Deposition at 89-90, 97-98. Throughout MLO's representation of the Tatums, they have had the demonstrated means to pay counsel's fees even before the occurrence of the contingency in the Contract for Legal Services. Jim Tatum Deposition at 7-11, 226-235, 324-327.

On December 19, 2002, after a six-day trial that MLO's principal conducted almost single-handedly on the Tatums' behalf, Jim Tatum Deposition at 302, the Colorado trial court entered judgment in the Tatums' favor in their damage action against Basin in the amount of $622,000.00 in compensatory damages, plus additional monetary relief. Morris Declaration, ¶ 98, pp. 24-25, and Exhibit 34; Jim Tatum Deposition at 287. The amount of compensatory damages was 100% of the diminution in value that the Tatums' real estate expert identified, less credit to Basin for an earlier judgment the Tatums had obtained for diminution in the value of their property. Morris Declaration, ¶ 98, pp. 24-25.

As described in the preceding section of this memorandum, MLO proceeded after trial to prepare and file the Tatums' bill of costs, a reply in support of the Tatums' bill of costs, and a supplement to the Tatums' bill of costs. With the filing of the last of these pleadings, MLO completed all required actions in the trial court, with the potential exception of any hearing on the bill of costs that the Colorado trial court may convene. Jim Tatum Deposition at 289.

On or about February 4, 2003, the Tatums terminated the Contract for Legal Services and withdrew the authority of MLO and its principal to litigate the Tatums' bill of costs to final decision.

Morris Declaration, ¶ 133, p. 33; Jim Tatum Deposition at 208. Since that date, the Tatums have not paid the fee required by Section 2.1(b) of the Contract for Legal Services, nor have they reimbursed any of the expenses that were then outstanding. Morris Declaration, ¶ 140, p. 35.

According to the Tatums' bill of costs and its supplement, the fee currently due MLO under the formulation prescribed in Section 2.1(b) of the Contract for Legal Services is $151,312.50. Morris Declaration, Exhibits 30, 32. As MLO pointed out in the preceding section of this memorandum, Jim Tatum is a signatory attorney on the Tatums' bill of costs and its supplement, and he has neither withdrawn them nor modified them during the year and a half since they were filed. Morris Declaration, ¶ 101, p. 25; Jim Tatum Deposition at 36, 199-202. Thus, the bill of costs and its supplement remain before the Colorado trial court exactly as MLO filed them.

IV.

**Argument and Authorities**

**A.     MLO Is Entitled to Summary Judgment on Its Interpleader Claim.**

A portion of funds that MLO deposited into this Court's registry is the balance of fees due MLO for work performed in the judicial review litigation. No other party has asserted a claim to that portion of the funds – specifically, $8,782.15. *See* James Eddie Tatum's Responses to the Plaintiff's Interrogatories, Response to Interrogatory No. 20 ("I don't think we intended to claim over $19,966.35 [of the interpled funds]"); Ann Tatum's Responses to the Plaintiff's Interrogatories, Response No. 18 ("We have never claimed that [MLO] owes us more than $19,966.35 of the interpled funds."). Accordingly, as a matter of law, MLO is entitled to receive $8,782.15 of the funds currently on deposit the Court's registry, plus a proportionate share of the interest accrued on those funds since MLO deposited them.

-9-

MLO is also entitled, as a matter of law, to receive the rest of the funds deposited in the Court's registry. The Contract for Legal Services which defines the Tatums' relationship with MLO requires the Tatums "to reimburse all of [MLO]'s reasonable expenses incurred in connection with work performed under this contract." Morris Deposition, Exhibit 6, § 3.0, p. 3. The Tatums authorized MLO to employ TEE to provide engineering consulting services and expert testimony in aid of the Tatums' damage action against Basin. Morris Declaration, ¶ 112, p. 28; Ann Tatum Deposition at 47, 51.

On December 17, 2002, MLO billed the Tatums for the last portion of TEE's total of $31,553.00 in fees and expenses. Morris Declaration, Exhibit 80. Following the Tatums' directions and paying an additional sum on its own, MLO had on that date paid $12,368.00 from expense reimbursements that the Tatums paid to MLO. Morris Declaration, ¶ 124, p. 31. Thus, the balance due TEE on December 17, 2002, stood at $19,185.00.[2]

On December 24, 2002, MLO filed a bill of costs on behalf of the Tatums in their damage action against Basin. Morris Declaration, ¶ 96 and Exhibit 30. The bill of costs seeks an award of expert witness fees that includes the full amount of fees and costs that TEE billed to MLO in connection with the Tatums' damage action. *Id.* Subsequently, MLO prepared and filed a reply memorandum in support of the Tatums' bill of costs which reiterated the Tatums' claim for an award of expert witness fees including the full amount that TEE had billed to MLO. *See* Morris Declaration, Exhibit 31.

---

[2]   Exhibit 80 to the Morris Declaration shows a total balance due MLO of $19,256.52. The disparity is due to expenses that MLO incurred in addition to the fees and expenses the firm owed TEE.

That Jim Tatum reviewed and approved both the Tatum's bill of costs and their reply in support of that bill is not genuinely in dispute. Morris Declaration, ¶ 96, p. 24, ¶ 100, p. 25. Mr. Tatum appears as a signatory attorney on each pleading. *See* Exhibits 30, 31. The pleadings remain pending before the Colorado trial court just as they were filed. Morris Declaration, ¶ 101, p. 25; Jim Tatum Deposition at 36, 199-202.

In Virginia "[t]he essential elements of a cause of action for breach of contract are: (1) 'a legal obligation of a defendant to the plaintiff,' (2) 'a violation or breach of that right or duty,' and (3) 'a consequential injury or damage to the plaintiff.'" *Westminster Investing Corp. v. Lamps Unlimited, Inc.*, 379 S.E.2d 316, 317, 237 Va. 543, 546 (1989), quoting *Caudill v. Wise Rambler*, 210 Va. 11, 13, 168 S.E.2d 257, 259 (1969). Here, the Contract for Legal Services – as "an agreement between two or more persons which creates an obligation to do or not do a particular thing" – imposed a legal obligation on the Tatums to pay the expenses that MLO billed to them within thirty (30) days of MLO's billing. *Buchanan v. Doe*, 431 S.E.2d 289, 292 (Va. 1993); *see* Morris Declaration, Exhibit 6 at 3. The Tatums have violated that duty by failing to make timely payment of the expenses in question and by continuing to withhold payment as of the date on which MLO files this memorandum. Morris Declaration, ¶ 125, p. 31, ¶ 140, p. 35. The Tatums' violation of their duty has caused a consequential injury to MLO by depriving it of funds needed to pay TEE. Morris Declaration, ¶ 145, p. 36. Thus, as a matter of law, MLO is entitled to receive $19,185.00 of the funds deposited in the Court's registry, plus a proportionate share of the interest accrued on those funds.

MLO recognizes its obligation to pay to TEE $19,185.00 of the funds in the Court's registry, plus that sum's proportionate share of interest, if the Court directs the Clerk to pay those funds to

MLO instead of to TEE directly. MLO pledges to make such payment immediately upon receipt of such funds. On the other hand, MLO is advised that TEE intends to file a motion for summary judgment with respect to that portion of the funds now on deposit in the Court's registry. MLO does not object to the entry of summary judgment in favor of TEE for that portion of the interpled funds, provided that the order granting such judgment extinguishes MLO's entire debt to TEE.

MLO is entitled to receive the remaining $1,056.35 of the funds it deposited into the Court's registry, plus a proportionate share of the accrued interest on those funds, in satisfaction of additional expenses billed to the Tatums in MLO Invoice Nos. 10155 (Dec. 24, 2002) (Morris Declaration, Exhibit 30, Attachment 1, Exhibit A at 25), 10157 (Jan. 23, 2003) (Morris Declaration, Exhibit 32, Attachment at 2-3), and 10186 (Jul. 12, 2004) (Morris Declaration, Exhibit 90), which total $1,213.44. Although only $781.35 of the total has been billed to the Tatums more than thirty (30) days ago, billing the last $432.09 of these expenses and waiting thirty (30) days would be futile and a waste of judicial resources in light of the Tatums' termination of their contract with MLO and failure to pay any expenses thereafter.

Accordingly, MLO is entitled as a matter of law to judgment distributing to it all of the funds on deposit in the Court's registry with respect to this action, subject to MLO's acknowledged obligation to pay to TEE $19,185.00 of those funds, plus a proportionate share of the interest that has accrued on the interpled funds. Alternatively, if the Court elects to grant TEE's motion for summary judgment, MLO is entitled to $9,838.50 of the funds that MLO deposited into the registry of this Court, plus a proportionate share of the interest that has accrued on those funds.

**B.**     **MLO Is Entitled to Summary Judgment on Its Contract Claim Against the Tatums**

As MLO noted in the preceding section of this memorandum, in Virginia "[t]he essential elements of a cause of action for breach of contract are:  (1) 'a legal obligation of a defendant to the plaintiff,' (2) 'a violation or breach of that right or duty,' and (3) 'a consequential injury or damage to the plaintiff.'" *Westminster Investing Corp. v. Lamps Unlimited, Inc.*, 379 S.E.2d 316, 317, 237 Va. 543, 546 (1989), quoting *Caudill v. Wise Rambler*, 210 Va. 11, 13, 168 S.E.2d 257, 259 (1969). With respect to fees due upon termination, the Contract for Legal Services embodied the Tatums' agreement "to pay[] a partial attorney fee for all time that Morris and any paralegals may have expended under this contract . . . computed at the rate of $250.00 per hour of Morris' time and $50.00 per hour of paralegal or law clerk time, reduced by credit for the $5,000.00 initial fee that the Tatums pay at the execution of this contract." Morris Declaration, Exhibit 6 at 2.  The Tatums' legal obligation to pay the partial attorney fee upon their unilateral termination of the Contract for Legal Services was immediate and existed "regardless of whether Morris' recovery of attorney fees would otherwise be contingent upon recovery of either money damages or an attorney fee award." *Id.*

The Tatums admittedly terminated the Contract for Legal Services prior to final judgment. Jim Tatum Deposition at 208; *see also* Morris Declaration, ¶ 133, p. 33.  They also unilaterally withdrew MLO's authority to litigate their bill of costs to final decision.  *Id.*  Since doing so the Tatums have violated their duty to pay the partial attorney fee they promised to pay under Section 2.1(b) of the Contract for Legal Services.  Morris Declaration, ¶ 140, p. 35.  The Tatums' violation of that duty has consequentially damaged MLO.  Morris Declaration, ¶ 145, p. 36.  Accordingly, with respect to Count Two of the complaint in this action, MLO is at a minimum entitled to judgment

as a matter of law that the Tatums have breached the Contract for Legal Services by failing to pay

the partial attorney fee due under Section 2.1(b).

MLO acknowledges the decision of the Supreme Court of Virginia in *Heinzman v. Fine, Fine, Legum & Fine*, 234 S.E.2d 282, 286 (Va. 1977), that:

> where, as here, an attorney employed under a contingent fee contract is discharged without just cause and the client employs another attorney who effects a recovery, the discharged attorney is entitled to a fee based upon *quantum meruit* for services rendered prior to discharge . . . ."

In a footnote to this holding, the court explained that "[a]s applied in this context, a *quantum meruit*

determination looks to the reasonable value of the services rendered, not in benefit to the client, but,

in themselves." *Id.* (internal quotation marks and citation omitted). Nothing in *Heinzman* precludes

MLO from recovering the fees that the Tatums owe under Section 2.1(b) of the Contract for Legal

Services.

First, the contingent fee contract in *Heinzman* did not include a provision governing the

payment of fees in the event the client terminated the contract prior to entry of final judgment. In the

absence of a contract provision directly governing the issue, the Virginia Supreme Court ruled that

a client's termination of a legal services agreement does not constitute a breach of contract and

therefore does not provide the discharged attorney with a cause of action for such a breach. In the

absence of a cause of action for breach of contract in such circumstances, the Virginia Supreme Court

authorized the recovery of a fee for services rendered as *quantum meruit*.

As noted earlier in this memorandum, the Contract for Legal Services at issue in this action

does contain a specific provisions (1) recognizing the Tatums' right to terminate the contract

"unilaterally at any time, for any reason or for no reason" and (2) requiring the Tatums to pay a

partial fee immediately computed by multiplying "all time that [MLO employees] may have expended under this contract" times specified hourly rates for Walton Morris and other MLO employees. Thus, unlike the discharged attorney in *Heinzman*, MLO does not assert the Tatums' termination of the Contract for Legal Services as a breach of contract justifying a judgment for damages. The Tatums did not breach the Contract for Legal Services when they terminated it; they breached the contract when the violated their follow-up legal obligation under to pay, immediately, a partial attorney fee computed in accordance with the contract's terms.

The partial attorney fee specified in the Contract for Legal Services is computed in a manner generally consistent with the principles that *Heinzman* and other Virginia case law establish for computing legal fees in *quantum meruit* – that is, reasonable hours expended multiplied by reasonable hourly rates. *See Heinzman v. Fine, Fine, Legum & Fine*, 234 S.E.2d at 286, citing *County of Campbell v. Howard*, 133 Va. 19, 51, 112 S.E. 876, 885 (1922); *Hughes v. Cole*, 465 S.E.2d 820, 834 (Va. 1996) (reciting factors established in *County of Campbell*, including "the labor, time, and trouble involved" and "the professional skill and experience called for"). Thus, the partial attorney fee provision of Section 2.1(b) of the Contract for Legal Services simply incorporates the partial attorney fee principle announced in *Heinzman* and replaces the fee-computation factors established in *County of Campbell* with the modern day fee-shifting lodestar formulation.[3] Nothing in *Heinzman* prevents parties from freely contracting to use the lodestar formulation to compute an attorney's fee

---

[3]     MLO acknowledges that Section 2.1(b) goes on to require the Tatums to pay the agreed contingent fee if they recover damages and fee awards from Basin. Without waiving the right to enforce that provision of the contract, MLO emphasizes that it has not sought to do so in this action. Accordingly, the question whether "full fee" provision of Section 2.1(b) is consistent with the principle announced in *Heinzman* is not now before the Court.

upon termination of the contract rather than using the more subjective, but otherwise indistinguishable factors established in *County of Campbell*.

Nor does *Heinzman* preclude MLO from enforcing the so-called "conversion" clause in Section 2.1(b) of the Contract for Legal Services, which makes the Tatums' obligation to pay a partial attorney fee immediate, "regardless of whether [MLO]'s recovery of attorney fees would otherwise be contingent upon recovery of either money damages or an attorney fee award." The contingent fee agreement in *Heinzman* apparently did not contain such a provision; the Virginia Supreme Court certainly did not discuss the issue.[4] MLO has found no Virginia authority on the issue.

MLO urges the Court to rule that, as a matter of Virginia law, conversion clauses such as the one in Section 2.1(b) are valid "absent overreaching on the part of the attorney."[5] *See Heinzman v. Fine, Fine, Legum & Fine*, 234 S.E.2d at 285. There is no evidence whatsoever of attorney overreaching in the negotiation of the Contract for Legal Services at issue in this action.

Alternatively, without waiving the provision in the Contract for Legal Services which requires interpretation of the contract in accordance with Virginia law, MLO notes that Formal Opinion 100 of the Ethics Committee of the Colorado Bar Association holds conversion clauses permissible where (1) the client is relatively sophisticated, (2) has the demonstrated means to pay counsel's fees even

---

[4]    *Heinzman* does make clear, however, that calculation of the prescribed *quantum meruit* fee need not await the final outcome of the client's damages litigation. The *Heinzman* court expressly ruled out computing a discharged attorney's *quantum meruit* fee based on the benefit they might ultimately provide to the client and instead required consideration of "the reasonable value of the services . . . in themselves." *Heinzman v. Fine, Fine, Legum & Fine*, 234 S.E.2d at 286 n.4.

[5]    To the extent that the Court deems it necessary and appropriate to certify to the Supreme Court of Virginia, pursuant to that Court's Rule 5:42,

before the occurrence of the contingency, and (3) has specifically negotiated the conversion clause.[6] As experienced attorney and paralegal, the Tatums manifestly are "relatively sophisticated" clients. They clearly had the demonstrated means throughout prosecution of their damage action against Basin to pay MLO's fees prior to recovering damages from Basin.   Jim Tatum Deposition at 7-11, 226-235, 324-327.   Jim Tatum and MLO's principal specifically negotiated retention of the "conversion" clause in Section 2.1(b) of the Contract for Legal Services.   Morris Declaration, ¶¶ 38-43, pp. 9-10; *see also*   Jim Tatum Deposition at 89-90, 97-98 (describing Mr. Tatum's role in negotiating other provisions of the contract).   Although Mr. Tatum now professes not to recall negotiating with MLO's principal regarding the conversion clause, Jim Tatum Deposition at 100, his lack of recall does not create a genuine dispute of material fact on the issue.   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249-50.   Accordingly, to the extent that the Court may determine that conversion clauses are generally incompatible with the principle announced in *Heinzman*, MLO urges the Court to hold that Virginia law creates an exception that allows enforcement of a conversion clause where, as here, the factors established in Opinion 100 are met.

Computation of the partial attorney fee that the Tatums owe under Section 2.1(b) of the Contract for Legal Services is straightforward and also appropriate for summary judgment.   As stated in the Tatums' bill of costs and its supplement, Morris Declaration, Exhibits 30, 32, MLO spent 593 attorney hours, 13.75 paralegal hours (distinct from Ann Tatum's work), and 147.50 travel hours on the Tatums' damage action and early administrative proceedings.   Multiplied by the hourly rates specified in Section 2.1(b) (except with respect to travel hours, which MLO billed at $50.00/hour)

---

[6]   MLO attaches a copy of Opinion 100 as Attachment B to this memorandum.   The pertinent text may be found at page 11.

and reduced by the Tatums' $5,000.00 initial retainer payment, those hours produce a partial attorney fee of $151,312.50. That is the fee that MLO seeks in its contract claim.

There is no genuine dispute that the Tatums specifically authorized MLO to file their bill of costs and its supplement after reviewing two sets of pre-bill worksheets and the final bills themselves. Jim Tatum appears as a signatory attorney on each of those pleadings. Despite their current challenges to MLO's bills as unreasonable, the Tatums have not withdrawn or modified their bill of costs or its supplement, which remain pending before the Colorado trial court. Moreover, Basin has not challenged MLO's hours or hourly rate as unreasonable. *See* Morris Declaration, Exhibit 35. The only objections Basin lodged to MLO's claimed hours were legal objections based upon case law that generally excludes certain travel time and time spent in preliminary administrative proceedings. Neither of those objections is relevant with respect to the fee computation prescribed in Section 2.1(b) of the Contract for Legal Services.

Because the Tatums have not withdrawn or modified their bill of costs or its supplement, they are precluded from taking the inconsistent position in this litigation that the charges they seek to recover from Basin are unreasonable as to them. Moreover, in light of Basin's acceptance of MLO's claimed hours and hourly rates as reasonable, the Tatums' contrived, self-serving challenge to MLO's billed time is insufficient to create a genuine issue of material fact and thus forestall summary judgment.

In addition to the fee due MLO under Section 2.1(b) of the Contract for Legal Services, the Tatums also owe MLO $157.09 in unreimbursed expenses in excess of funds that the Court might direct the Clerk to pay from this Court's registry. Those expenses are shown on MLO Invoice No.

10186.  *See* Morris Declaration, ¶ 141, p. 35, and Exhibit 90.  MLO urges the Court to enter summary judgment for that additional amount.

**C.     Alternatively, MLO Is Entitled to Summary Judgment on Its *Quantum Meruit* Claim**

If the Court determines that MLO may not recover for breach of Section 2.1(b) of the Contract for Legal Services, but that MLO may now recover a *quantum meruit* fee, MLO is entitled to summary judgment for such a fee in the same amount – $151,312.50 – as it claims for breach of contract.  This is so because, in MLO's view, the fee-computation factors established in *County of Campbell v. Howard* produce the same result as fee-shifting lodestar analysis:

- the amount and character of the services rendered in this case is established in the timesheets accompanying the Tatums' bill of costs and its supplement and are the same services, of identical character, as involved in lodestar analysis;

- the responsibility imposed on MLO in the Tatums' damage action was service as lead attorney in a complex property damage action, *see* Morris Declaration, Exhibit 6, § 1.0;

- the labor, time, and trouble involved, like the amount and character of the services rendered, appear in the timesheets attached to the Tatums' bill of costs and its supplement and are the identical to the hours MLO claims in lodestar analysis;

- the amount of money to be affected in the Tatums' damage action turned out to be $622,000.00, plus prejudgment interest and litigation costs, *see* Morris Declaration, Exhibit 98;

- the high level of professional skill and experience called for are described in Jim Tatum's affidavit in support of the Tatums' fee petition in the judicial review litigation as well as the declaration of MLO's principal in support of the Tatums' bill of costs, *see* Morris Declaration, Exhibits 13, 30;

- the character and standing in the profession of MLO's principal, are evident in the finding of the Colorado trial court that Mr. Morris' hourly rate of $250 per hour was reasonable in the far less demanding judicial review litigation;

- MLO's fee in the Tatums' damage action was, of course, largely contingent rather than fixed;

- the result achieved was judgment for 100% of the Tatums' proof of damages, plus prejudgment interest and litigation costs.

Application of the *County of Campbell* factors fully supports the fee that MLO requests. That fee is equitable in light of the $622,000.00 judgment that the Colorado trial court granted the Tatums. MLO urges the Court to award the firm a fee of $151,312.50 under principles of *quantum meruit*, if the Court finds those principles applicable on the facts of this case. As under MLO's contract claim, MLO alternatively requests under its *quantum meruit* claim summary judgment for an additional $157.09 in expenses that the Tatums have failed to reimburse.

## V.

## Conclusion

For the reasons set forth above, MLO requests that the Court enter summary judgment in favor of MLO on Count One of the complaint and either (i) direct the Clerk to pay to MLO all sums currently held in the registry of this Court in connection with this action, with further direction that MLO immediately pay to TEE out of those funds the sum of $19,185.00 plus such prejudgment interest as the Court finds appropriate, or (ii) alternatively, direct the Clerk to pay directly to TEE the sum of $19,185.00 plus such prejudgment interest as the Court finds appropriate and to pay to MLO the balance of the funds currently held in the registry of this Court in connection with this action. Additionally, MLO requests that the Court enter summary judgment for MLO and against the Tatums, jointly and severally, on Count Two of complaint in the total amount of $152,597.46, including $151,312.50 in legal fees due under Section 2.1(b) of the parties' Contract for Legal Services and $1,284.96 in expenses due under Section 3.0 of the Contract for Legal Services, with

provision that such judgment cancel any debt MLO may owe Ann Tatum for paralegal services.

Alternatively with respect to fees for work performed in the Tatums' damage action against Basin,

MLO requests that the Court enter summary judgment for MLO against the Tatums, jointly and

severally, on Count Three of the complaint in the amount of $152,597.46, including $151,312.50 in

legal fees due under principles of *quantum meruit*, plus $1,284.96 in expenses due under Section 3.0

of the Contract for Legal Services, with provision that such judgment cancel any debt MLO may owe

Ann Tatum for paralegal services.  MLO also requests that the Court grant the firm its costs in this

action, prejudgment interest, and such other or further relief as the Court may deem proper.

Respectfully submitted,

MORRIS LAW OFFICE, P.C.
– By Counsel –

_-s-  Peter B. Vaden_____
Peter B. Vaden
Attorney at Law
609 East Market Street, Suite 206
Charlottesville, Virginia 22902
Telephone: (434) 923-4044
Facsimile: (434) 923-4045
Virginia State Bar No. 31432

Walton D. Morris, Jr.
Morris Law Office, P.C.
Post Office Box 6804
Charlottesville, Virginia 22906
(434) 293-6616
Virginia State Bar No. 14438